ORDERED.

**Dated:  May 20, 2016**

Cynthia C. Jackson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

PHILADELPHIA HAITIAN BAPTIST             Case No.: 6:14-bk-06667
CHURCH OF ORLANDO                        Chapter 11

      Debtors
_____/

**ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN OF**
**REORGANIZATION AND GRANTING OTHER RELIEF**

THIS MATTER came before the Court on April 7, 2016, for hearing to consider confirmation (the "Confirmation Hearing") of the Debtor's Second Amended Plan of Reorganization [Doc. 81] (the "Plan"), the final approval of the Third Amended Disclosure Statement [Doc. 82] (the "Disclosure Statement"), the Motion of TMI Trust Company, as Trustee, for Enlargement of Time to File Affidavits Regarding Results of Bondholder Solicitation Packages and Ballot [Doc. 102] ("Extension Motion"), and the Application for Compensation of Arvind Manendru, Debtor's Attorney [Doc. 109] (the "Compensation Application"); and the Bondholder Solicitation Packages having been duly transmitted to

Bondholders entitled to vote on the Plan pursuant to, and as defined in, the Order Approving Bondholder Solicitation Procedures [Doc. 97] (the "Solicitation Order"); and due notice of the Confirmation Hearing and the deadline for voting on and/or objecting to, the Plan having been provided to parties in interest, and such notice being sufficient under the circumstances and no other or further notice being required; and the Court having reviewed and considered the Plan, Trustee's Notice of Filing Affidavits Regarding Results of Bondholder Solicitation Packages [Doc. 103] (describing, among other things, that voting on the Plan has been solicited in accordance with the Bondholder Solicitation Procedures) (the "Trustee Affidavit"), Trustee's Notice of Filing Trustee's Ballot Voting to Accept Debtor's Plan on Behalf of Class 1 Allowed Secured Claim and the Class 2 Unsecured Deficiency Claim [Doc. 104], the Amended Ballot Tabulation [Doc. 107] (the "Ballot Tabulation"), the Declaration of Jean Bernadin in Support of Confirmation [Doc. 108] (the "Declaration"); and the Objection to Claim [Doc. 111] (the "Objection") being granted and resolved as provided herein; and the evidence presented and admitted at the Confirmation Hearing having been considered; the Court has determined based upon all of the foregoing that the Plan should be confirmed, as reflected by the rulings made herein and consistent with the ruling on the record at the Confirmation Hearing, and makes the following findings of fact and conclusions of law:

## FINDING OF FACT

A.      <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7052 and 9014. The Court incorporates by reference all findings of fact and conclusions of law set forth on the record at the Confirmation Hearing as if set forth fully herein. To the extent

any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Capitalized Terms</u>.  Capitalized terms used but not defined herein shall have the respective meanings attributed to such terms in the Plan.

C.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b) and this Court has power to enter a final order consistent with Article III of the United States Constitution with respect thereto.  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The Debtor is the plan proponent in accordance with 11 U.S.C. § 1121(a).[1]

D.    <u>Notice</u>.  Adequate and sufficient notice, as required pursuant to the Bankruptcy Rules was provided to all known creditors, equity security holders, the Office of the U.S. Trustee, and other parties in interest of: i) the Plan and Disclosure Statement; ii) the deadline to file and serve objections to confirmation of the Plan; iii) the deadline for voting on the Plan; and iv) the hearing on approval of the confirmation of the Plan.

E.    <u>Voting</u>.   Voting on the Plan was solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Trustee Affidavit, Declaration, and Ballot Tabulation, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Solicitation Order, the Bankruptcy Code, and the Bankruptcy Rules.

F.    <u>Resolution of Objection</u>.  At the Confirmation Hearing, the Court confirmed the Plan subject to the Debtor filing an objection to TC Tampa 1, LLC's ("Claimant") claim, which is

---

[1] Subsequent cites to title 11 of the United States Code may sometimes be to "the Bankruptcy Code."

designated as Claim No. 2 on the Claims Register (the "Claim").  The Debtor subsequently filed its Objection pursuant to Local Rule 2002-4.  An Amended Notice of Filing of Claimant's Notice of Withdrawal of Proof of Claim and Response to Debtor's Objection [Doc. 115] was subsequently filed wherein Claimant withdrew its Claim and agreed to the relief requested in the Objection.

G.    Final Approval of Disclosure Statement. The Disclosure Statement complies with 11 U.S.C. § 1125 and contains adequate information within the meaning of that section of the Bankruptcy Code.

## COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE

H.    All of the requirements for Confirmation under 11 U.S.C. § 1129 have been satisfied.  Confirmation of the Plan is in the best interests of the Debtor's estate, creditors, and all other parties in interest.

I.    Plan Compliance - 11 U.S.C. § 1129(a)(1).  The Plan and plan modifications and additions comply with the applicable provisions of the Bankruptcy Code, including without limitation 11 U.S.C. §§ 1122, 1123, 1125, and 1129(a) and (b), with respect to all Classes of Claims and Interests under the Plan and, therefore, the provisions of 11 U.S.C. § 1129(a)(1) have been satisfied.

a.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). Article 3 and 4 of the Plan adequately and properly identify and classify all Claims and Interests. The Claim and Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class, and such classification is therefore consistent with section 1122 of the Bankruptcy Code. Valid business and legal reasons exist for the various Classes of Claims and Interests created

under the Plan, and such classification does not unfairly discriminate among Holders of Claims or Interests. Accordingly, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code

b. Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan provides in Article 5 that Claims in Classes 3, 4, 5, 6, 7, and 8 are not impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c. Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan specifies in Article 5 the Classes of Claims and Interests that are impaired, and specifies the treatment of the Impaired Classes (Classes 1, 2), thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

d. No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for Claims and Interests in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e. Implementation of the Plan (11 U.S.C. § 1123(a)(5)). Article 8 of the Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

f. Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)). The Debtor is a religious organization and thus, the Plan does not expressly provide for the inclusion in the charter of the Debtor a provision prohibiting the issuance of nonvoting securities. Nonetheless, because the Plan does not provide for the issuance of any securities, the issuance of nonvoting

securities is impossible. Therefore, the Plan satisfies the requirements set forth in Bankruptcy Code section 1123(a)(6) and/or those requirements are inapplicable.

g. <u>Designation of Officer, Director, of Trustee (11 U.S.C. § 1123(a)(7))</u>. Section 8.03 of the Plan regarding the management of the Debtor is consistent with the interests of creditors and equity security holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

h. <u>Earnings from Personal Services (11 U.S.C. § 1123(a)(8))</u>. Section 1123(a)(8) of the Bankruptcy Code applies only to individual debtors and is not applicable in this Chapter 11 case.

i. <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>. As permitted by Bankruptcy Code section 1123(b)(1), Sections 5.01 and 5.02 of the Plan designate Classes 1 and 2 as Impaired.

j. Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Article 7 of the Plan governs the assumption and rejection of executory contracts and unexpired leases and meets the requirements of Bankruptcy Code section 365.

k. <u>Preservation of Causes of Action (11 U.S.C. § 1123(b)(3))</u>. Section 8.07 of the Plan provides for the retention of causes of action not expressly settled or released under the Plan. Thus, the Plan satisfies the requirements of Bankruptcy Code section 1123(b)(3).

l. <u>Distributions of Proceeds of Sale (11 U.S.C. § 1123(b)(4))</u>. Consistent with section 1123(b)(4) of the Bankruptcy Code, the Plan effectuates the distribution of the remaining proceeds of the sale of all or substantially all of the property of the

Estates under the Plan or prior sale orders entered in these Chapter 11 Cases. Thus, the Plan satisfies the requirements of Bankruptcy Code section 1123(b)(4).

m.  <u>Modification of Rights of Creditors (11 U.S.C. § 1123(b)(5))</u>. The Plan modifies the rights of the certain secured and unsecured creditors by providing rights set forth in the Plan in exchange for their Claims. Thus, the Plan satisfies the requirements of Bankruptcy Code section 1123(b)(5).

n.  Additional Plan Provisions (11 U.S.C. § 1123(b)(6)): The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code. The failure to specifically address a provision of the Bankruptcy Code in this Order shall not diminish or impair the effectiveness of this Order.

J.  <u>Proponent Compliance - 11 U.S.C. § 1129(a)(2)</u>.  The Debtor, the proponent of the Plan, has complied with the applicable provisions of the Bankruptcy Code.  Accordingly, the requirements of 11 U.S.C. § 1129(a)(2) have been satisfied.

K.  <u>Good Faith - 11 U.S.C. § 1129(a)(3)</u>.  The Plan has been proposed in good faith and not by any means forbidden by law.  Accordingly, the requirements of 11 U.S.C. § 1129(a)(3) have been satisfied.

L.  <u>Payment of Professionals - 11 U.S.C. § 1129(a)(4)</u>.  Any payments made or to be made by the Debtor, for services or for costs and expenses in or in connection with this chapter 11 case, or in connection with the Plan and incident to this chapter 11 case, has been approved by, or are subject to the approval of, this Court as reasonable.  Accordingly, the requirements of 11 U.S.C. § 1129(a)(4) have been satisfied.

M.    <u>Officers/Directors - 11 U.S.C. § 1129(a)(5)</u>.    The following individuals will continue to act in their respective capacity as members of the Debtor's Board of Directors:

| *Name* | *Position* |
|---|---|
| Jean Bernadin | President and Chief Administrator/ Board Member |
| Ernst Joseph | Deacon President/ Board Member |
| Ester Bernadin | Secretary/Board Member |

Jean Bernadin is and shall be authorized to execute, deliver, file or record such documents, instruments, releases and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The continued employment of these individuals is consistent with the interests of creditors and equity security holders and with public policy. Accordingly, the requirements of 11 U.S.C. § 1129(a)(5)(A) have been satisfied.

N.    <u>Governmental Approval - 11 U.S.C. § 1129(a)(6)</u>. No governmental regulatory commission has jurisdiction over the rates of the Debtor post-confirmation.  Accordingly, 11 U.S.C. § 1129(a)(6) is not applicable.

O.    <u>Best Interests of Creditors - 11 U.S.C. § 1129(a)(7)</u>.  With respect to each Impaired Class of Claims or Interests, each holder of a Claim or Interest has accepted the Plan, or will receive or retain under the Plan on account of such claim, property of a value, as of the Effective Date not less than the amount such holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.  Based on the foregoing, the requirements

of 11 U.S.C. § 1129(a)(7) have been satisfied with respect to each Impaired Class of Claims or Interests.

       P.    <u>Acceptance or Rejection of Plan - 11 U.S.C. § 1129(a)(8)</u>.  As described in the Ballot Tabulation, each Class of Claims or Interests that are entitled to vote have accepted the Plan or is not impaired under the Plan.  Accordingly, the requirements of 11 U.S.C. § 1129(a)(8) have been satisfied with respect to each Class of Claims or Interests.

       Q.    <u>Administrative and Priority Claims - 11 U.S.C. § 1129(a)(9)</u>.  The Plan provides that all Allowed Unsecured Priority Claims and Allowed Administrative Claims are to be paid on the Effective Date or as soon as practicable thereafter, the date on which such claims become payable pursuant to Final Order of the Court, or as otherwise provided in the Plan.  Accordingly, the requirements of 11 U.S.C. § 1129(a)(9) have been satisfied.

       R.    <u>Acceptance by Impaired Class - 11 U.S.C. § 1129(a)(10)</u>.  Each Impaired Class of Claims has accepted the Plan accepted the Plan.  Accordingly, the requirements of  11 U.S.C. § 1129(a)(10) have been satisfied.

       S.    <u>Feasibility - 11 U.S.C. § 1129(a)(11)</u>.  The Debtor will distribute funds in accordance with creditors' priorities under the Plan and the Plan is per se feasible. The Plan is feasible because, *inter alia*, the Debtor has been able to meet its financial obligations during the pendency of this chapter 11 case.  Thus, confirmation of the Plan is not likely to be followed by any further liquidation or the need for further financial reorganization of the Debtor under the Plan, except to the extent proposed in the Plan.  Accordingly, the requirements of 11 U.S.C. § 1129(a)(11) have been satisfied.

       T.    <u>U.S. Trustee Fees - 11 U.S.C. § 1129(a)(12)</u>.  The Plan provides for payment in full of all U.S. Trustee fees payable under 28 U.S.C. § 1930 and all fees payable under Section

1930 of Title 28.  To the extent any fees remain due and owing, they will be paid on the later of (i) the Effective Date of the Plan, and (ii) the due date for such fees under the regular schedule set forth by the United States Trustee.  Accordingly, the requirements of 11 U.S.C. § 1129(a)(12) have been satisfied.

U.    <u>Retiree Claims - 11 U.S.C. § 1129(a)(13)</u>.    The Debtor has no obligation to provide retiree benefits.  Accordingly, 11 U.S.C. § 1129(a)(13) is not applicable.

V.    <u>Domestic Support Obligations - 11 U.S.C. § 1129(a)(14)</u>.    The Debtor is not required by a judicial or administrative order, or by statute, to pay any domestic support obligation.  Accordingly, 11 U.S.C. § 1129(a)(14) is not applicable.

W.    <u>Non-Individual Debtors – 11 U.S.C. § 1129(a)(15)</u>.    The Debtor is not an individual.  Accordingly, 11 U.S.C. § 1129(a)(15) is not applicable.

X.    <u>Transfers of Property - 11 U.S.C. § 1129(a)(16)</u>.    The Plan does not involve the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.  Accordingly, 11 U.S.C. § 1129(a)(16) is not applicable.

Y.    <u>Cramdown – 11 U.S.C. § 1129(b)(1)</u>.    All of the applicable requirements of subsection (a) of this 11 U.S.C. § 1129 have been met with respect to the Plan.  Therefore, 11 U.S.C. § 1129(b)(1) is inapplicable.

Z.    <u>Avoidance of Taxes – 11 U.S.C. § 1129(d)</u>.    Neither the avoidance of taxes nor the avoidance of Section 5 of the Securities Act of 1933 is a principal purpose of the Plan.

It is therefore **ORDERED AND ADJUDGED** that**:**

1.    The Extension Motion [Doc. 102] is GRANTED.  The Court accepts as timely filed the Affidavits attached to the Notice of Filing Affidavits [Doc. 103] and the Ballot attached

to the Notice of Filing Ballot [Doc. 104], filed concurrently with the Extension Motion on March 23, 2016.

2.  The Compensation Application [Doc. 109] is APPROVED for the amount of $21,000.00.

3.  The Disclosure Statement [Doc. 81] is finally APPROVED.

4.  The Plan [Doc. 81], as attached hereto as **Exhibit A**, is CONFIRMED and APPROVED in all respects; provided, however, that if there is any conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

5.  The Objection [Doc. 111] is SUSTAINED and the relief requested therein is GRANTED; Claim No. 2 filed by TC Tampa 1 is disallowed in its entirety in the amount of $446,585.34.

6.  Any and all objections to Confirmation not withdrawn or otherwise addressed in this Order are expressly OVERRULED.

7.  The Findings of Fact and Conclusions of Law set forth above shall constitute findings of fact and conclusions of law of this Court pursuant to Federal Rule of Civil Procedure 52(a)(1), as incorporated by Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact it shall be so deemed.

8.  Pursuant to Article 7 of the Plan, Executory Contracts and unexpired leases that exist between the Debtors and any person or entity are deemed rejected as of the Confirmation Date and subject to the occurrence of the Effective Date.  Accordingly, entry of this Order shall constitute the approval, pursuant to sections 365(a) and 1123(b)(2) of the

Bankruptcy Code, of the rejection of Executory Contracts and unexpired leases pursuant to Section 7.02 of the Plan.

9. Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Order and occurrence of the Effective Date, and except as otherwise ordered by this Court, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, this Chapter 11 case and the Plan to the fullest extent permitted by law.

10. The Plan shall be binding upon the Debtors, and all present and former Holders of Claims against and Interests in any Debtor, regardless of whether any such Holder of a Claim or Interest has voted or failed to vote to accept or reject the Plan and regardless of whether any such Holder of a Claim or Interest is entitled to receive any Distribution under the Plan. On the Effective Date and the commencement of distribution under the Plan, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

11. The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect, and enforceability of such provision and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan.

12. The Reorganized Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as this Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case.

13. After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall serve on the United States Trustee a financial report or statement of disbursements

for each quarter (or portion thereof) that this Chapter 11 case remains open, in a format prescribed by the United States Trustee.

14. **Post-Confirmation Status Hearing.** A post-confirmation hearing in this case will be held on **October 6, 2016, at 2:00 p.m.**, in Courtroom 6D, 6th Floor, George C. Young Courthouse, 400 W. Washington Street, Orlando, Florida. The hearing may be continued upon announcement made in open Court without further notice. You are reminded that Local Rule 5072-1(b)(16) requires that all persons appearing in Court should dress in business attire consistent with their financial abilities.  Shorts, sandals, shirts without collars, including tee shirts and tank tops, are not acceptable. Avoid delays at Courthouse security checkpoints.  You are reminded that Local Rule 5073-1 **restricts the entry of cellular telephones** and, except in Orlando, computers into the Courthouse absent a specific order of authorization issued beforehand by the presiding judge. Due to heightened security procedures, persons must present photo identification to enter the Courthouse.

Attorney Arvind Manendru is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

PHILADELPHIA HAITIAN BAPTIST                    Case No.: 6:14-bk-06667-CCJ
CHURCH OF ORLANDO, INC.,                                              Chapter 11

        Debtor.

_____/

## DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION

### ARTICLE 1
### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") is being proposed by Philadelphia Haitian Baptist Church of Orlando, Inc. (the "Debtor") pursuant to 11 U. S. C. §1121.

All creditors and equity security holders should refer to Articles 3 through 6 and 12 of this Plan for information regarding the precise treatment of their claims.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE 2
### DEFINITIONS – INTERPRETATION – GENERAL PROVISIONS

2.01   Definitions.   For Purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

      a.   Administrative Expense shall mean a cost or expense of administration of the Chapter 11 Case allowed under §§503(b) and 507(a)(2) of the Bankruptcy Code.

      b.   Allowed when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or

EXHIBIT A

(ii) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order; (b) allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

      c.    <u>Bankruptcy Rules</u> mean the Federal Rules of Bankruptcy Procedure, as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended.

      d.    <u>Bar Date</u> shall mean the date fixed by order of the Bankruptcy Court by which a proof of Claim or Interest must be filed against the Debtor.

      e.    <u>Bankruptcy Code</u> shall mean 11 U. S. C. §101 et seq., and any amendments thereto.

      f.    <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court, Middle District of Florida, Orlando Division, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

      g.    <u>Business Day</u>  shall mean any day except Saturday, Sunday, or any legal holiday.

      h.    <u>Chapter 11 Case</u> shall mean the above referenced Chapter 11 reorganization case of the Debtor pending in the Bankruptcy Court.

      i.    <u>Claim</u> shall mean, as defined in §101(5) of the Bankruptcy Code: (a) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

      j.    <u>Class</u> means a group of Claims of Interests substantially similar to each other as classified under this Plan.

      k.    <u>Confirmation Date</u> shall mean the date of entry of the Confirmation Order.

      l.    <u>Confirmation Order</u> shall mean the order entered by the Bankruptcy Court confirming the Plan.

      m.    <u>Contested</u> when used with respect to a Claim or Interest, shall mean a Claim or Interest that is not an Allowed Claim or Interest.

2

EXHIBIT A

n.    Disallowed when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent 14 days has expired since it has been disallowed by order of the Bankruptcy Court unless proper application for a stay of such order has been made within such 14 day period, in which case the Claim or Interest shall be disallowed 30 days after entry of the order disallowing such Claim or Interest, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim or Interest.

o.    Disclosure Statement means the disclosure statement that was filed by the Debtor pursuant to Bankruptcy Code Section 1125 and any amendments thereto, including all exhibits.

p.    Distribution Date when used with respect to each Claim or Interest shall mean as soon as practicable after the later of (a) the Effective Date, or (b) the first Business Day of the next calendar month after the date upon which the Claim or Interest becomes an Allowed Claim or Interest, unless the Claim or Interest becomes an Allowed Claim or Interest within fifteen days before the first Business Day of the next calendar month, in which case the Distribution Date shall be the first Business Day of the next succeeding calendar month.

q.    Effective Date shall mean: (a) if no stay of the Confirmation Order is in effect, then the 30th day after the Confirmation Order is entered, or (b) if a stay of the Confirmation Order is in effect, then the 30th day following the date the stay is vacated or any appeal, rehearing, remand or petition for certiorari is resolved in a manner that does not reverse or materially modify the Confirmation Order.

r.    Final Order means an order of the Bankruptcy Court, which order shall not have been reversed, stayed, modified or amended and the time to appeal from or to seek review or rehearing of such order shall have expired and which shall have become final in accordance with applicable law.

s.    Interest means a membership interest in the Debtor.

t.    Objection Deadline means the date by which objections to Claims and Interests must be filed with the Bankruptcy Court which shall be 30 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

u.    Petition Date shall mean June 6, 2014.

v.    Plan shall mean this Chapter 11 plan, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

3

EXHIBIT A

v(a).     Plan Payment shall mean a monthly payment required to be paid to TMI, as the holders of the Class 1 Claims pursuant to Section 5.01 of this Plan.

w.     Priority Non-Tax Claim shall mean a Claim entitled to priority pursuant to §§507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code.

x.     Priority Tax Claim shall mean a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code.

x(i).     Pro Rata Share shall mean a share that is proportionate to each respective Interest or Claim holder's Interests or Claims in the respective Class of such Interest or Claim.

y.     Secured Claim shall mean a Claim secured by a lien against property in which the Debtor has an interest, or which is subject to setoff under §553 of the Bankruptcy Code to the extent of the value (determined in accordance with §506(a) of the Bankruptcy Code) of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amounts subject to such setoff, as the case may be.

y(a).     TMI shall mean TMI Trust Company, solely in its capacity as Successor Trustee for the First Mortgage Bonds, 2007 Series, dated November 28, 2007, and OSK I, LLC, as the successor in interest to San Joaquin Bank.

z.     Unsecured Claim means a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim or a Secured Claim.

z(a).     Unsecured Notes shall mean promissory notes payable to the holders of Allowed Unsecured Claims under Section 5.02 of this Plan.

2.02     Bankruptcy Code Definitions.  Definitions in the Bankruptcy Code and Bankruptcy Rules shall be applicable to the Plan unless otherwise defined in the Plan. The rules of construction in Bankruptcy Code §102 shall apply to the Plan.

2.03     Interpretation.  Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations.

4

EXHIBIT A

2.04    <u>Severability</u>.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

2.05    <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

2.06    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

2.07    <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**ARTICLE 3**
**<u>CLASSIFACTION OF CLAIMS AND INTERESTS</u>**

Claims against and Interests in the Debtor will be classified as follows except to the extent otherwise agreed.

Class 1.        The Allowed Secured Claim of TMI

Class 2.        All Allowed Unsecured Claims

Class 3.        Equity interests of the Debtor

Class 4.        Allowed Non-Tax Priority Claims

Class 5.        The Allowed Secured Claim of Luca 2 LLC

Class 6.        The Allowed Secured Claim of CRI Tax Assets LLC

Class 7.        The Allowed Secured Claim of Michael A. Morse

Class 8.        The Allowed Secured Claim of Sterns Bank, NA

**ARTICLE 4**
**TREATMENT OF ADMINISTRATIVE EXPENSE**
**<u>CLAIMS, U.S. TRUSTEE FEES, AND PRIORITY TAX CLAIMS</u>**

5

EXHIBIT A

4.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims and priority tax claim are not in classes.

4.02    Administrative Expense Claims.  Each holder of an allowed administrative expense claim will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

4.03    Allowed Priority Tax Claims.  Each holder of an allowed priority tax claim will be paid in full in cash on the effective date of the Plan.  The Debtor believes that no such claims exist.

4.04    United States Trustee Fees.  All fees required to be paid by 28 U. S. C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

## ARTICLE 5
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The Claims and interests will be treated as follows under this Plan:

5.01    Class 1 – The Allowed Secured Claim of TMI.  This Class consists of the allowed mortgage claim of TMI on real property more particularly described as follows:

> Lot 1, Block K, Pine Hills Subdivision Number 8, as recorded in Plat Book "T", pages 68 and 69, Public Records of Orange County, Florida. (Less begin at the Northwesterly corner of said Lot 1, run thence North 89 degrees 38' 50" East along the North line of said Lot 1, 35 feet; thence South 57 degrees 12'20" West 41.47 feet to the West line of said Lot 1, thence North 0 degrees 21' 10" West, along the West line of said Lot 1, 22.25 feet to the Point of Beginning). All said lands lying and being in Orange County, Florida

> Lot 2 through 7, Block J, PINE HILLS SUBDIVISION NO. 8, according to the plat thereof, recorded in Plat Book T, Pages 68 and 69, Public Records of Orange County, Florida

> Lots 2 through 10, Block D, PINE HILLS SUBDIVISION NO. 1, according to the plat thereof, as recorded in Plat Book R, page 70, Public Records of Orange County, Florida.

The Debtor values the estate's interest in the real property at $3,665,000.00. The Debtor will pay the valuation amount as a re-amortized first mortgage, together with interest at the rate of 5.25%, in equal monthly installments over a period of 240 months

EXHIBIT A

commencing on the first day of the first month after the Effective Date. This Class is Impaired.  The holder of such claim shall retain its lien and the loan will be modified consistent with the terms set forth above. The estimated total monthly payment to TMI is $24,697.00.

In the event any Plan Payment is not received by the holders of Class 1 by the date that such Plan Payment is due under this Plan, such payment is delinquent and the holders of Class 1 shall mail and e-mail the Debtor to notify the Debtor that payment is delinquent (the "Delinquency Notice").  In the event that the delinquency is not cured through the holders of Class 1 receiving the delinquent Plan Payment no later than 5:00 p.m. local time on the third business day following transmittal of the Delinquency Notice, exclusive of the day of its transmittal, the holders of Class 1 may thereupon mail and e-mail the Debtor, and may file with the Bankruptcy Court or any other Court as necessary, an affidavit (the "Default Affidavit") stating that the Debtor is in default under the Plan.  Upon the transmittal and any necessary filing of the Default Affidavit, the holders of Class 1 may thereupon immediately continue or commence any foreclosure proceedings to enforce their lien on the aforementioned real property standing as collateral for Class 1 notwithstanding any contrary provision of the Bankruptcy Code or this Plan.  For the purposes of any such foreclosure proceedings, any credit bid rights of the holders of Class 1 shall be limited to a maximum credit bid in the amount of $3,665,000.

For the purposes of construing the above, a Plan Payment shall not be deemed to be received by the holders of Class 1 unless the funds have been directly delivered to the holders of Class 1 by the Debtor, either by cash payment, by the completion of an electronic funds transfer or wire transfer to the account of the holders of Class 1 at their financial institution, or by payment of a check through banking channels by credit to the account of the holders of Class 1 at its financial institution.  A Plan Payment shall not be deemed to be received simply upon delivery by the Debtor to the holders of Class 1 of a check payable to or for the benefit of the holders of Class 1; rather, any check must be paid upon deposit in its full amount in order to be deemed received.  In the event a Plan Payment is made by check, the holders of Class 1 will attempt to deposit the check, but if the check is not paid upon deposit in its full amount by the day that such Plan Payment is due under this Plan, the remaining due payment shall be deemed delinquent.  Any effort to cure such delinquency must not be via check; rather, it must be by cash payment, by the completion of an electronic funds transfer or wire transfer to the account of the holders of Class 1 at their financial institution.

5.02   Class 2 – All Allowed Unsecured Claims.  This Class consists of Allowed Unsecured Claims.  The holders of Allowed Unsecured Claims shall receive on account of such Claims a Pro Rata Share of the Unsecured Notes. The aggregate principal amount of Unsecured Notes will be the lesser of: (i) the amount of Allowed Unsecured Claims; and (ii) $12,600.00. The Unsecured Notes will be payable, without interest, in 12 equal

EXHIBIT A

monthly installments for 60 months commencing 30 days after the Effective Date in full satisfaction of Class 3 claims.  This Class is Impaired.

  5.03 <u>Class 3 – Membership Interests in the Debtor.</u> The Debtor is a religious organization.  To the extent, if any, there are equity security interests in the Debtor, the Plan leaves unaltered the legal, equitable and contractual rights of the holders of such interests. This Class is Unimpaired.

  5.04 <u>Class 4 - Allowed Non-Tax Priority Claims</u>.  This Class consists of Claims entitled to priority under Code sections 507(a)(1)-(7), except Administrative Expenses. Debtor is not aware of any material claims in this Class.  Holders of such Claims shall receive on account of such Claims, cash in the amount of such Claims.  This Class is Unimpaired.

  5.05 <u>Class 5 – The Allowed Secured Claim of Luca 2 LLC</u>. Class 5 consists of the secured claims held by Luca 2 LLC for the 2008 real property tax claim in the estimated principal amount of $2,980.10. In full satisfaction of the Allowed Class 5 Claims, the Reorganized Debtor will pay to the Luca 2 LLC, commencing on the first day of the first month after the Effective Date, monthly payments of principal and interest based on a five (5) year amortization of the Allowed Class 2 Claims at the interest rate of 18%. Luca 2 LLC retains its lien to the same extent, validity and priority as it had prior to the Petition Date. The estimated total monthly payment to the Luca 2 LLC is $76.00.

  5.06 <u>Class 6 – The Allowed Secured Claim of CRI Tax Assets LLC</u>. Class 6 consists of the secured claims held by CRI Tax Assets LLC for the 2009 real property tax claim in the estimated principal amount of $3,056.88. In full satisfaction of the Allowed Class 6 Claims, the Reorganized Debtor will pay to the CRI Tax Assets LLC, commencing on the first day of the first month after the Effective Date, monthly payments of principal and interest based on a five (5) year amortization of the Allowed Class 6 Claims at the interest rate of 9%. CRI Tax Assets LLC retains its lien to the same extent, validity and priority as it had prior to the Petition Date. The estimated total monthly payment to the CRI Tax Assets LLC is $64.00.

  5.07 <u>Class 7 – The Allowed Secured Claim of Michael A. Morse</u>. Class 7 consists of the secured claims held by Michael A. Morse for the 2010 real property tax claim in the estimated principal amount of $2,652.49. In full satisfaction of the Allowed Class 7 Claims, the Reorganized Debtor will pay to the Michael A. Morse, commencing on the first day of the first month after the Effective Date, monthly payments of principal and interest based on a five (5) year amortization of the Allowed Class 7 Claims at the interest rate of 8.25%. Michael A. Morse retains its lien to the same extent, validity and priority as it had prior to the Petition Date. The estimated total monthly payment to Michael A. Morse is $55.00.

EXHIBIT A

5.08    Class 8 – The Allowed Secured Claim of Sterns Bank NA. Class 8 consists of the secured claims held by Sterns Bank NA for the 2011 real property tax claim in the estimated principal amount of $2,749.35. In full satisfaction of the Allowed Class 8 Claims, the Reorganized Debtor will pay to Sterns Bank NA, commencing on the first day of the first month after the Effective Date, monthly payments of principal and interest based on a five (5) year amortization of the Allowed Class 8 Claims at the interest rate of 9%. Stern Bank NA retains its lien to the same extent, validity and priority as it had prior to the Petition Date. The estimated total monthly payment to Sterns Bank NA is $58.00.

## ARTICLE 6
## PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

6.01    Objection Deadline.   Unless extended by the Bankruptcy Court, the Debtor shall file any objections to Claims or Interest no later than thirty (30) days after the Confirmation Date.

6.02    Prosecution of Objections.   The Debtor shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Contested Claims or Interests.  All professional fees and expenses incurred by the Debtor from and after the Confirmation Date, shall be paid in the ordinary course of business without further order of the Bankruptcy Court.

6.03    No Distributions Pending Allowances.  No payments or distributions shall be made with respect to any Contested Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

6.04    Escrow of Allocated Distributions.  The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims and Interest as of the Effective Date.  As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim or Interest.  The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made or such obligations arise.  If practicable, the Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

6.05    Distributions After Allowance.  Payments and distributions from escrow to each holder of a Contested Claim or Interest, to the extent that such Claim or Interest

9

**EXHIBIT A**

ultimately becomes an Allowed Claim or Interest, shall be made in accordance with the provisions of the Plan governing the class of Claims or Interests to which the respective holder belongs. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim or Interest becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Contested Claim or Interest became an Allowed Claim or Interest shall be distributed, together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim or Interest then been an Allowed Claim or Interest to the date such distributions are made.

6.06    Distributions After Disallowance. If any property withheld in escrow remains after all objections to Contested Claims or Interests of a particular class have been resolved, then such remaining property, to the extent attributable to the Contested Claims or Interests, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the class of Claims or Interests to which the Disallowed Claim or Interest belong.

## ARTICLE 7
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01    Assumed Executory Contracts and Unexpired Leases. The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan:

NONE

7.02    Rejected Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 7.01 above. A proof of a claim from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE 8
## MEANS FOR IMPLEMENTATION OF THE PLAN

8.01    Funding and Implementation of the Plan. The cash payments required by Article 5 will be made from tithing or donations received from church members.

8.02    Continued Existence. The Debtor shall continue to exist and operate its church after the Effective Date as a not-for profit corporation in accordance with the laws of the State of Florida.

10

EXHIBIT A

8.03   <u>Management</u>.   The following individuals will continue to act in their respective capacity as members of the Debtor's Board of Directors:

| Name | Position |
|------|----------|
| Jean Bernadin | President and Chief Administrator/ Board Member |
| Ernst Joseph | Deacon President/ Board member |
| Ester Bernadin | Secretary/ Board member |

8.04   <u>Restated Articles of Organization</u>.   The operating agreement of the Debtor shall be amended as necessary to satisfy the provisions of the Plan and Bankruptcy Code.

8.05   <u>Revesting of Assets</u>.   The property of the estate of the Debtor shall revest in the Debtor on the Effective Date, except as otherwise provided in the Plan.   On and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code.   As of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Plan.

8.06   <u>Assumption of Liabilities</u>.   The liability for and obligation to make the distributions required under the Plan, shall be assumed by the Debtor which shall have the liability for and obligation to make all distributions of property under the Plan.

8.07   <u>Avoidance Actions</u>.   Causes of action assertable by the Debtor pursuant to Bankruptcy Code §§542, 543, 544, 545, 547, 548, 549, 550, or 553 shall, except as otherwise provided in the Plan, be retained by the Debtor.   Any net recovery realized by a Debtor on account of such causes of action, shall be the property of the Debtor.

## ARTICLE 9
## PROVISIONS GOVERNING DISTRIBUTION

9.01   <u>Pro Rata Distribution</u>.   Unless otherwise provided in the Plan, for any Class of Claims or Interests that is impaired, the holders of such Claims or Interests shall receive a Pro Rata Share of the property to be distributed to the Class under the Plan.   If, and when, Contested Claims or Interests in any such Class become Disallowed Claims or

11

**EXHIBIT A**

Interest, the Pro Rata Share to which each holder of an Allowed Claim or Interest in such Class is entitled, shall increase commensurately. Accordingly, the Debtor, in its sole discretion, shall have the right to make or direct the making of subsequent interim distributions to the holders of Allowed Claims or Interests in such Class to reflect any increases in the Pro Rata Share. In any event, as soon as practicable after all Contested Claims or Interests in any Class receiving Pro Rata Shares have become either Allowed or Disallowed, a final distribution shall be made to the holders of Allowed Claims or Interests in such Class to account for any final adjustment in the Pro Rata Share of such holders.

9.02    De Minimis Distributions. Notwithstanding any other provision of the Plan, there shall be no distribution of less than $20.00 on account of any Allowed Claim or Interest. If the Plan contemplates multiple distributions then the distribution shall accrue, without interest, and will be distributed on account of the Allowed Claim or Interest if and when the amount to be distributed equals or exceeds $20.00.

9.03    Distribution Date. Unless otherwise specified in the Plan or by order of the Bankruptcy Court:

a.      Property to be distributed to an impaired Class under the Plan shall be distributed on the Distribution Date. Distributions to be made on the Distribution Date shall be deemed made on the Distribution Date if made on the Distribution Date or as soon as practicable thereafter, but in no event later than ten (10) Business Days after the Distribution Date.

b.      Property to be distributed under the Plan to a Class that is not impaired shall be distributed on the latest of: (i) the Distribution Date; and (ii) the date on which the distribution to the holder of the Claim or Interest would have been made in the absence of the Plan.

9.04    Disbursing Agent. The Debtor or such disbursing agent as the Debtor may employ, in its sole discretion, shall make all distributions required under the Plan.

9.05    Cash Payments. Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

9.06    Delivery of Distributions. Distributions and deliveries to holders of Allowed Claims and Interest shall be made at the addresses set forth on the proofs of Claim or Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Debtor has been notified of a change of address). If any distribution to a holder is returned as undeliverable, then no further distributions to such holder shall be made unless and until the Debtor is notified of the holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. All Claims for undeliverable distributions shall be made on or

12

EXHIBIT A

before the fifth anniversary of the Distribution Date. After such date, all unclaimed property shall revert to the Debtor, and the claim of any holder with respect to such property shall be discharged and forever barred.

9.07  <u>Time Bar to Cash Payments</u>. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any checks shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of the fifth anniversary of the Distribution Date or ninety (90) days after the date of issuance of such check. After such date, all claims in respect of void checks shall be discharged and forever barred.

## ARTICLE 10
## TRUSTEE FEES

10.01  <u>Trustee Fees.</u> All fees payable under 28 U.S.C §1930, will be paid when due.

## ARTICLE 12
## DISCHARGE

12.01 <u>Discharge</u>. On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan: (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in §1141(d)(6)(B).

Dated:  10/09/15

/s/ Arvind Mahendru
Arvind Mahendru
Florida Bar No. 0061482
5703 Red Bug Lake #284
Winter Springs FL 32708
407-504-2462
Attorneys for Debtor and
Debtor-In-Possession

13

EXHIBIT A

Philadelphia Haitian Baptist Church of Orlando, Inc.

By: _____
      Pastor Jean Bernadin

14

EXHIBIT A

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via first-class United State Mail, postage prepaid, or via electronic file transfer this October 9, 2015, to Debtor; US trustee, via ECF; TMI Trust Company, in its capacity as Successor Trustee for the First Mortgage Bonds, 2007 Series, dated November 28, 2007, c/o Sunny Sidhu via ECF; twenty largest unsecured creditors and the following parties.


 LUCA 2 LLC
P.O. BOX 52890
SARASOTA, FL 34232

 CRI TAX ASSETS LLC
P.O. BOX 16234
CLEARWATER, FL 33766

 MICHAEL A MORSE
638 MAIN STREET
DANVILLE, NH 03819

 C/O STEARNS BANK NA
ATTN: SHANNON
4191 2ND STREET SOUTH
ST. CLOUD, MN 56301


                                    /s/ Arvind Mahendru_____
                                    Arvind Mahendru

EXHIBIT A